CASE 17—PETITION EQUITY—OCTOBER 6.

# Trigg vs. Trustees of Glasgow.

APPEAL FROM BARREN CIRCUIT COURT.

1. The trustees of the town of Glasgow being authorized by law "to levy an ad valorem tax on the property, both real and personal, within said town, that is listed for State purposes, including the amount given in under the equalization law," and all the taxable property in said town on the 10th of April being "subject to taxation," and also all "the taxable property *in* said town which may have been removed without its limits between the 1st of January and 10th of April for the purpose of evading the tax, shall be listed for taxation." *Held*— that money or other substantive thing in bank, or in the actual possession of its owner, within the town limits—equalization property —in Glasgow, was subject to the local tax, and that such as was elsewhere was exempt.

2. Upon the refusal of a party to list his equalization property in Glasgow, it was the duty of the assessor to report him to the board of trustees, and if, upon citation by the president of the board, the recusant failed to appear, or appearing, refused to communicate or swear to his equalization means in Glasgow, then, and only then, the assessor might have proceeded *ex parte* to assess such pretermitted property.

J. R. UNDERWOOD,                                    For Appellant,

CITED—

*Revised Statutes, chap.* 83.

1 *Acts* 1855–6, 282.

2 *Acts* 1857–8, 42.

J. W. GORIN,                                        For Appellees,

CITED—

*Acts* 1855–6, 286–287.

2 *Acts* 1857–8, 43.

*Rev. Stat., chap.* 83, *art.* 6, *sec.* 16.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Under the authority of the charter of the "Barren County Railroad," from the town of Glasgow to the Louisville and Nashville Railroad, Glasgow subscribed $50,000 of stock, for paying which the 16th section of the charter made the following injunction on the trustees of Glasgow: "It shall be the duty of said trustees to levy an *ad valorem* tax on the property, both real and personal, *within* said town, that is listed for State purposes, including the amount given in under the equalization law, sufficient, &c."

An amendatory act of 1858 declares that "all the taxable property *in* said town on the 10th of April shall be subject to taxation for the payment of said subscription," and also provides that the taxable property *in* said town which may have been removed without its limits between the 1st of January and 10th of April, for the purpose of evading the tax, shall be listed for taxation.

The appellant, Trigg, a citizen of Glasgow, refusing to list any property under the equalization law, listed his other property in that town at the valuation of $5,235, and the assessor, on *ex parte* testimony, increased the list $50,000 by adding choses in action, money, and mercan-

tile interests in Louisville, as subject to the equalization
tax ; and Trigg, by this suit, enjoins the collection of that
supplemental tax.

The dissolution of that injunction presents the only
subject for our consideration on this appeal.

As the 16th section, already quoted, limited the tax on
real estate to such as is *in* Glasgow, the same limita-
tion constructively applies to the equalization property,
and authorizes the local tax to be levied on such prop-
erty, only so far as it may be deemed there localized—as
money or other substantive thing in bank or in the actual
possession of its owner within the town limits.    This is
the literal, and we think, the intentional import of the
statute.    And this interpretation is fortified by so much
of the supplemental act as confines the local taxation to
property *in* Glasgow subject to State tax, and provides
against evasion by removal, which necessarily includes
only such equalization and other property as might be so
removed, and excluding such as was not considered so
localized and removable.

According to this interpretation of the charter, the ap-
pellant's equalization property in Glasgow was subject to
the local tax, and such as was elsewhere was exempt;
and, consequently, the assessment, as made against his
will, was excessive, and ought to be enjoined.    It was
illegal for another reason.

The appellant, admitting that he owned a large amount
of equalization property subject to State taxation, but
insisting that none of it, wherever it might be, was sub-
ject to the local tax, refused to give any of it in to the
assessor, who thereupon took his verified list of other
property, and proceeded, in the appellant's absence and
without his aid, to make the haphazard assessment re-
ported.

In that procedure both parties erred. If, as the record clearly intimates, the appellant owned equalization property in Glasgow, it was his duty to list it, and he may still be required to do it. And the assessor's duty and only legal right was to report him to the president of the board of trustees, and if, on the president's citation, the appellant had either failed to appear, or, appearing, had refused to communicate or swear to his equalization means in Glasgow, then, and only then, the assessor might have proceeded *ex parte* to assess such pretermitted property in Glasgow; but not, as he did, elsewhere. Such is the peremptory law, intended to secure honest tax-payers against unjust and hazardous assessments made without their knowledge or aid.

Wherefore, the judgment is reversed, and the cause remanded, with instructions to perpetuate the injunction.